Moving on to our next case. We will now hear United States v. Hernandez-Calvillo, which is number 19-3210, and the consolidated case on United States v. Pepa Lotse, number 19-3211. Mr. Pierce, you may proceed. Thank you. Good morning, Your Honors, and may it please the Court, James Pierce for the United States. As the defendants acknowledge, the terms encourage and induce can refer solely to facilitating and soliciting unlawful activity. That's what they mean in the provision at issue here as the text, context, and history demonstrate. Prohibitions on solicitation and facilitation have existed since before the founding and are perfectly constitutional. There's no reason for this Court to interpret them more expansively, only to strike the statute down. That approach would contravene the canon of constitutional avoidance. Now, even if this Court were to conclude that subsection 4 covers some protected speech, the statute's plainly legitimate suite, which encompasses the defendant's conduct here, substantially outpaces that narrow subset. How do we know that? I'm sorry, how do we know that this is legitimate? Or how can we know that? So it's admittedly a challenging question and one that Justice Kagan struggled with at oral argument in the Sinanang-Smith case. I think the relevant metrics here, although, is that the defendants cannot point to a single prosecution that involves purely protected speech, even though this provision has been around for, in its current form, nearly 30 years, along with other terms that suggest facilitation and solicitation much longer than that. Based on that, there's simply no realistic danger. Well, are we limited to actual prosecutions? Is that the universe that we're looking at? Or shouldn't we be able to go beyond that and consider potential or actual applications of the statute to protected activity? So this court is not limited to actual prosecutions. And there is some sweet spot between actual prosecutions and then the fanciful hypotheticals that the defendants summon forth in their brief. Notably, though, none of the hypotheticals that the defendants posit have been prosecuted. And in our view, none of them fall within the scope of the plain language, within the scope of the statute. And to the extent that there are close cases at the margins, it's not overbreadth. But as applied constitutional challenges, that is the appropriate avenue to police and make sure that the statute is used consistently with the First Amendment. Now, interpreting encourage and induce as essentially solicitation and facilitation statutes flows not only from its long usage alongside similar terms. I just ask if we agree with your argument on that, you consider that alone to be dispositive of this of this appeal with your with your interpretation of those words, encourage and induce. I think so. I mean, the overbreadth analysis proceeds in two steps. And if the court adopts what we believe is the correct and narrow interpretation of encourage and induce in this statute, I think that knocks out any of the potential, again, hypothetical cases and any realistic danger that is that there is an overbreadth problem. Let me just ask you, though, about encourage and induce. You want to argue that we should understand those terms as they're understood in the criminal law context. But why shouldn't we understand them according to their ordinary dictionary definition? We decided a recent case called USP Thomas in 2019 where that debate happened and the majority ended up saying the ordinary meaning that dictionary meaning should should apply. And in fact, I came out on the short end of that argument. But that that's that's where the case came out. Well, Judge Matheson, I hope you come out on our end of the argument here. But I think the answer is there is no platonic or absolute definition of encourage. And I think that flows from the Supreme Court's interpretation in Williams, where Justice Scalia writing for the majority, interpreting the terms present and promote in the statute prohibiting child pornography said, look, these are words of many meetings, but they have to be read contextually. And our response is you've got to read these terms contextually. And that operates across two axes. One, I've already mentioned these are typically used as words alongside words like assist, aid and abet, facilitate that have the meaning that we we suggest they do here, but then also along the axis of what the statute as a whole is aimed at. 1324 a one a is a conduct based provision provisions one, two and three respectively target bringing an alien into the United States, transporting or moving an alien within the United States and then harboring or concealing, etc. And so what subsection four does is essentially provide a residual conduct catch all. And as such, it captures a number of cases that that don't fall within those first three provisions, what case, what what cases does it capture. You struggled in your brief to seem to me to identify a single case that it would capture. It doesn't fall within some other provision. Well, I'm sorry. Go ahead. Okay. Two responses to that. First, there are a number of cases, this would be one of them. There are no other provisions within one through three that it captures Sinanang Smith itself would be another example. I recognize there was a mail fraud piece of that. But had she not mailed anything had she simply misrepresented to her clients, the availability of labor certifications that would have fallen within the only subsection four under our reading. I think this court's decision in Kalu in 2015 is another example. They are nurses were brought to the United States, bringing them certainly falls within subsection one but there was nothing to suggest that they were unlawfully brought. Once they were here, they were then deployed in a manner for the defendants for profit corporation. I don't see how that falls within any of the other provisions. But then the second point is, I'm sorry. I've been listening and wondering for days in regards to this statute. Let's assume that I'm a Duke basketball coach, and that I know of an athlete in Mexico who happens to be a very, very good athlete. I encourage him to come to the United States, telling him that we'll give him a full ride scholarship to play basketball for Duke. Now as a coach. Am I guilty under this statute. Only I suppose if you're planning to bring him here. I've already brought him here. He's, he's here. And I know that he's illegal, but I'm encouraging him to come to do. And I'm inducing him because I'm going to give him a full ride scholarship to play for an outstanding team. Is that a violation of this statute. No, I don't think so. I think that would fall within the scope of subsection one unlawfully bringing someone here, but encourage and induce does not simply mean sort of abstract advocacy or admittedly urging using words in the way that you know one might argue is it's is it's ordinary meeting, in our view, you have to read it in the context, again, of the statute as a whole. So it's not to capture that hypothetical, nor to capture for example the hypothetical of the grandmother, saying to her grandchild, I encourage you to stay in the United States. As a different council are you saying that then my hypothetical that that is speech, and not chargeable under this statute. I don't, I don't, I do think that that that is speech that would fall outside of the scope I don't want to be careful to say that speech is it can still form part of criminal conduct. If that speech is part of the process of bringing that individual into the United States, then potentially again under subsection one there is basis for for criminal liability but it's got to be more than just urging by words I mean even the Henderson case which the defendants rely on some degree involved a federal immigration official who employed knowingly employed someone who was not lawfully present in the country. Now, the, that the defendant they are also made a statement to the unlawful alien, something to the effect of you should you really shouldn't leave the country you're, you're not likely to get back in. And we acknowledge that's a close case, but I think what's important is that that is paired with the conduct with the conduct of the defendant actually paying the, the alien in that case. And so, why, why wouldn't your answers to both judge Moritz's and judge ball ducks questions limit or narrow the legitimate sweep of section four. I mean your response to judge ball duck as well we'll move that up to section one, and I'm thinking okay well if we do that, then doesn't that narrow the sweep of section four. And isn't that relevant in comparing the legitimate and not legitimate applications of section four. So I think that's an opportunity for me to get back to the second response to judge Moritz's question which is, if there is some overlap between statutes, that's not a problem, Congress does that all the time. And I acknowledge that section four serves largely as a residual conduct provision, right, I think many of these fit more comfortably in other statutes both within 1324 a one a and potentially in other places. But the fact is, although subsection for broadens a one a as a whole, by providing a kind of this catch all. It doesn't reach so broadly as to reach speech again and that's that follows from the language in the statute, as well as its history. This is a provision that in various forms has been on the book since 1885 has consistently encouraged and induce have been used alongside other words, suggesting facilitation and solicitation, you, you wouldn't expect Congress to then all of a sudden transform it into this broad speech fan that the defendant suggests that it now operates. Council, I've got several questions still related to what seems to be your only real argument here which is that we should essentially rewrite the statute to define these terms to have more of a criminal criminal scope, which, and use the words facilitation solicitation and aiding and abetting is how you would like us to see this and yet, number one, you didn't make this argument below the district court never had a chance to rule on it. Assuming we get past that the statute already criminalizes aiding and abetting your client or the defendant here I'm sorry the defendant was acquitted of this. of aiding and abetting. So I don't know why we would read aiding and abetting into section four, and plus, aiding and abetting. And the terms that you're using for till facilitation and solicitation, usually refer, usually always as far as I know, refer to situations where you're aiding and abetting an underlying crime where you're facilitating an underlying crime, and there's no underlying crime here. It's not a crime to be present in this country undocumented. So, I guess if you address that last problem first with your theory, and then perhaps the other two if you can. Okay, I'll do my best I would like to reserve some time for rebuttal but I obviously want to answer the court's questions as well. The Supreme Court in Williams specifically talked about facilitating or addressing illegal activity that also flows from the Supreme Court's decisions in Gazam and Pittsburgh press, it has not been limited just to criminal conduct it also includes unlawful conduct, including civil immigration offenses at issue here. We've already got an aiding and abetting, we've already got that provision defendant was charged with it, he was acquitted with it, why would we read that into. Why would we rewrite this section to add that. So we're not asking. We're not asking the court to rewrite it, and the aiding so so it sounds like a rewrite to me. The aiding and abetting provision in subsection five simply addresses sort of group activity right i mean it's like the conspiracy provision I mean here for example, it was, it would have been possible to argue and aiding and abetting theory that the defendants operated along with either the shut the drywall a shell drywall company owner or the cell phone owner and aided abetted them as the principal, and in our view, aiding and abetting liability differs from the liability that this encourage and language from outside of the statute it's simply built into what encourage and induce mean you've got to actively seek to bring about the unlawful result. I see that I've got nearly 20 seconds left to the extent possible I would like to reserve some time to respond to my friend on the other side's arguments. Thank you, Mr Fleming. Good morning and may please the court, Mark Fleming, arguing for the appellees Mr Hernandez Calvillo and Mr papalozzi. The council before you jump in because opposing council wants to save a couple of seconds. If the Congress knows how to add to a statute, aiding and abetting right and most assuredly your honor Yes. All right. That goes back to where judge Morris is coming from. So far as what I see, you know, rewriting the statute. I have some problems. I'm very glad judge ball if you raise it that's exactly where I was going to begin, is that the government's argument really does require rewriting the statute, aiding and abetting and soliciting our words Congress does know how to use it uses soliciting and 18 USC 373, which is the only federal solicitation statute there is it's not a general solicitation statute, it only prohibits solicitation of violent crime. And the Congress knows how to use aiding and abetting it uses it in the general aiding and abetting statute, a US 18 USC to, and also judge Moritz as you pointed out just two sub paragraphs after this one in the specific aiding and abetting statute in this provision encourage or induce however used by themselves. It's extremely rare we the only other situation that we found in which it was discussed was the Supreme Court's decision in the electrical workers case which we cite, where the Supreme Court said that encourage and that an encouragement statute read as an encouragement statute does not prohibit a substantial amount of free speech. There's another reason the government's efforts fail, however, and that's because even if this court were to rewrite the statute as a solicitation statute which we don't think it can be done. It would still be unconstitutional and judge Matheson this goes to your question as to whether the rewriting question issue is dispositive and most assuredly is not. And that is because as judge Moritz is a question toward the end pointed up, there is no historical tradition, going back to 1791 or before, prohibiting solicitation of non criminal activity, all of the government solicitation authorities speak to solicitation of crime felonies misdemeanors, as the Supreme Court said in us versus Stevens, there is no freewheeling authority to declare new categories of speech outside the scope of the First Amendment, those categories are well known to the bar, they are well defined they are narrowly limited, we all know them from law school obscenity defamation fraud, fighting words, speech soliciting non criminal activity has never been such a category, and the government, we should make no mistake about what the government is asking the government is asking this court to be the first court in history to declare that speech, encouraging, or even soliciting non criminal activity is completely outside of the First Amendment, that would be an evulsive ruling, and the government has not remotely come close to justify. So the statute is overbroad, it is overbroad, it is clear that the overbreath is substantial, it prohibits all kinds of commonplace and everyday communication that has never been thought to be illegal. Well, counsel, you're getting, I think you're moving from the step one part of the analysis which is construing the statute to the next step, which is balancing the legitimate and not legitimate uses. And it seems like this is a question that in the overbreath context that has been the vexing one of the vexing questions for courts, not just in this case and so I'm just going to put the question to you, how are we supposed to determine whether you've met your burden to show that the realistic illegitimate applications of the statute are substantial relative to the legitimate applications of the statute. Thank you. So how have you shown that and how is our court supposed to grapple with that problem. So I think I'll take the last part of the question first judge Madison how the court grapples with it is by asking the question that the Supreme Court asked in Williams and is asked in numerous other cases, which is a statute is facially invalid, if it prohibits a substantial amount of protected speech so we look at the scope of the prohibition. There is no requirement of showing actual prosecutions, although we have shown some and I'll get to that in a moment, but overbreath analysis does not turn on proof of actual prosecutions of speech, what matters is that it authorizes prosecutions of a large amount of protected speech. Let's remember in Stevens, for instance, there hadn't been any prosecutions under the animal cruelty depiction statute before Stephen Stevens was the first one, and the Supreme Court nonetheless struck it down as unconstitutional, and it pointedly did not decide whether Mr. Stevens own speech the dogfighting videos that he was selling were in fact protected and that was a statute where the commercial gain was an actual element of the fence. Miss Ellis, the anti riot act case out of the Fourth Circuit which we cited all of the prosecutions under the anti riot act have to do with conduct they have to do with attacking people and with rioting. But the Fourth Circuit nonetheless accepted the overbreath challenge to the encouragement provision of the anti riot act, because on its own, it swept in a vast amount of protected speech. Well, let me try to focus my question a little more than, and that is, if, if there is a clear core of constitutionally prescribable conduct that a for prohibits that is legitimate applications of the statute. Do you need to show applications that illegitimate applications that substantially outnumber the core applications. Don't, don't we have to look at both sides of the ledger here. Yes, absolutely. Okay. And, and, and how have you carried your burden in this case. Alright so so with respect to the the the substantial free speech that falls within the scope of the actual of the prohibition. We have, for example, the example that goes on in immigration lawyers offices every day which is an undocumented client comes and says, I need advice as to how best to advance my chances of staying in this country, and the lawyer will say well you might be eligible for relief under the Violence Against Women's Act, or because you are a victim of trafficking you might be eligible for a T visa, or you might be eligible for cancellation of removal, but all of those depend on your remaining physically present in the United States, and often for a certain period of time. Well, okay, I'm not, I'm not sure I want to necessarily question the factual validity of that. But how do we know that empirically. I mean it maybe there's a logic to what you're saying but how do we know that. Well, I mean, certainly in the sending Smith case there were amicus briefs that were filed they haven't been filed in this case, but the fact that there is that immigration lawyers advise undocumented clients I don't think is disputed. And what the government is has said and you know we have the actual case of both Henderson and sinning Smith, where advice was given now neither of them was a lawyer but they were giving advice that a lawyer could routinely have given. And contrary to what Mr. Pierce said the theory of prosecution in Henderson was alternative it wasn't simply based on hiring the district judge on page 200 says specifically the government's theory of criminal liability turns in this case on the contention that separately or together, Anderson's employment of and advice to bitten court was the non citizen were felonious, the government has not disavowed that as an error by a rogue prosecutor. That's what prompted the colloquy between the district judge and the USA, about what would happen when a lawyer is advising a client, and they insist, in fact, and they go so far as to mischaracterize the model rules of professional conduct that a lawyer who gave that advice would actually be actively involved in illegality, and that would be a remarkable chilling effect if this court were to uphold statute in the face of an argument like that. There are also seem to me that we're being done. I'm sorry it seemed to me and Henderson that the government was taking pretty much the opposite position that the government takes here in the sense that they accepted that the statutes terms were broad and all encompassing and, and admitted that yes, all these circumstances would be subject to prosecution. And apparently rightfully so. And let's be very clear, Your Honor, the position Mr Pierce is here taking now is exactly the opposite of the position the government took in this very case before the jury in an effort to get a conviction in this case recall the government opposed any effort to define encourage for the jury, not just in the initial charge conference which is on a book volume two page 303, where the government approved the district court saying to the jury that it should give the word it's ordinary meaning based on their own they certainly did not say that it means solicitation, they certainly did not say that it means aiding and abetting, nor did they say what I heard Mr Pierce say this morning which is that it requires some kind of a specific intent of wanting the supposedly encourage conduct to happen there's no causation requirement in the statute is certainly didn't suggest there was one to the, to the jury, and the other various flavors that come up in the briefing to this court about something that the that the non citizen has to know about the defendants encouragement that there has to be some kind of substantial assistance or substantial participation, none of that was argued to the jury, we cite numerous briefs, where the government and it's zeal to get a conviction or to get them affirmed on appeal has said repeatedly that this is a very broad statute in the Fuji case in the Seventh Circuit. The Seventh Circuit said at the government's urging all the government needs to establish under this provision was that the defendant knowingly helped or advised the aliens, those are the Seventh Circuit's words on page 540 of the, of the, of the Fuji. So we think there's no question and I think, you know, in Stevens let's let's know the Supreme Court said that the government's practices when enforcing the statute speak volumes about what the statutes plain language actually means. And there as well the government argued to the Supreme Court that the statute was much narrower than the jury instructions it had urged would have would have allowed and the Supreme Court said that the government is doing clearly shows the constitutional difficulty of interpreting the statute as read, and that works just as well in this case, I understand Mr Pierce is in a difficult position, having to try to defend what I think is a manifestly where the government takes the position that this is appropriately so a very broadly drafted statute encourage or induce encompasses every form of persuasion. That was, we think, unfortunately, the correct interpretation of the statute that Congress intentionally wrote in its effort to sweeten in any form of persuasion. Mr Fleming, but let me try a little different, a little different tack with this question. The statute uses the words, come to enter or reside in the United States. And you've argued that unauthorized residents in the United States is not a crime we've talked about that, but isn't coming to or entering the United States in violation of law, a crime. And if so, why wouldn't the government's facilitation or solicitation argument apply to those terms. I think if, if the statute were narrowly drawn to that, and if it actually said solicitation, then this would be a closer case but I would point out this case in particular is not a coming to or entering case if you look at volume three page three. Well, I understand about this case, you're making an overbreath argument, which means we're looking. We're looking beyond this case. Absolutely. infringe protected activity. So, let's be clear judge Matheson in the situations where there's an actual illegal entry and someone is actually accused of aiding and abetting an illegal entry that can be charged as aiding and abetting the offense of illegal entry, and it I apologize I didn't mean to put words in your mouth the import of the question which I think was correct and if I may, if I may use that is that there are numerous statutes that that are attached to illegal entry, whether it's illegal entry to come into work or illegal entry simply to to enter the country 1324 a two, which is the subsection immediately after the one we're talking about here, makes it unlawful to bring someone to the country in any way that is that when someone doesn't have permission to. And so in that situation, if you're talking about someone who is providing false documents, or who is dropping someone off at the border and then picking them up on the other side that can all be and is charged as aiding and abetting illegal entry. If the, if Congress were to draft a narrowly tailored privilege that said the solicitation of the crime of illegal entry is a is a crime we could have a different conversation, but that is not what Congress that what Congress wrote and the reason that I referred to the indictment in this case is to make clear that this is an example precisely where the only accusation is not of any kind of encouragement of people crossing the border illegally and committing a crime it wasn't people residing here, which of course is not a criminal offense. I see the clock is read it I'm happy to take any further questions the court has of course there's plenty, plenty to discuss any, any more questions for Mr Fleming from the panel. All right, Mr Pierce, you, I think you reserved 12 seconds but Mr Fleming went over and I interrupted you at the end so let's take. Why don't you take a minute to give us your final words. Thank you. I'll see if I can sneak in three points. One I want to just remind the court of constitutional avoidance principle, and we're at a point where in an overbreath inquiry the court should use every available tool to limit the statute we of course do not want the court to hold that it is limited only to civil offenses. But if that's what the court does, we're limited only to conduct but that's also an available way for the court to limit the scope. Second, focusing on the jury instructions here is not something that's relevant to the constitutional inquiry, it may be a basis for if this court were to reverse and then go back for resentencing and maybe a basis for the court to consider that at that point, we think it's probably harmless if there was any error at all but it shouldn't play into the constitutional inquiry at all. And then the very last point that I'd like to make is because there is a solid constitutional court to this statute, it shouldn't be overbreath, but it should be as applied to challenges for all of these difficult borderline cases and hypotheticals, which have never been prosecuted. That's something that can be threshed out through individual as applied challenges, not through the strong medicine that is constitutional overbreath. Thank you very much. Thank you, Mr. Pierce and Mr. Fleming. We appreciate your arguments. Very interesting discussion this morning. The case will be submitted and counsel are excused. Thank you again.